UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GABRIELA ROMERO,                                    Case No. 6:13-cv-00631-HA

        Plaintiff,                                    OPINION AND ORDER

        v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

_____

HAGGERTY, District Judge:

Plaintiff Gabriela Romero seeks judicial review of a final decision by the Acting

Commissioner of the Social Security Administration denying her applications for Supplemental

Security Income (SSI) and Disability Insurance Benefits (DIB). This court has jurisdiction to

review the Acting Commissioner's decision under 42 U.S.C. § 405(g). After reviewing the

record, this court concludes that the Acting Commissioner's decision must be REVERSED and

REMANDED for further proceedings.

OPINION AND ORDER - 1

## STANDARDS

A claimant is considered "disabled" under the Social Security Act if: (1) he or she is unable to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Hill v. Astrue,* 688 F.3d 1144, 1149-50 (9th Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3); *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999)); 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a). In steps one through four, the Commissioner must determine whether the claimant (1) has not engaged in SGA since his or her alleged disability onset date; (2) suffers from severe physical or mental impairments; (3) has severe impairments that meet or medically equal any of the listed impairments that automatically qualify as disabilities under the Social Security Act; and (4) has a residual functional capacity (RFC) that prevents the claimant from performing his or her past relevant work. *Id.* An RFC is the most an individual can do in a work setting despite the total limiting effects of all his or her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p. The claimant bears the burden of proof in the first four steps to establish his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show that jobs exist

OPINION AND ORDER - 2

in a significant number in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits. 20 C.F.R. §§ 404.1520(f)(1), 416.920(a). On the other hand, if the Commissioner can meet its burden, the claimant is deemed to be not disabled for purposes of determining benefits eligibility. *Id.*

The Commissioner's decision must be affirmed if it is based on the proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).

When reviewing the decision, the court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998). If, however, the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision, the decision must be set aside. *Id.* at 720.

## BACKGROUND

Plaintiff was born in 1988 and was twenty-one years old at the time of her alleged disability onset date. She protectively filed her applications for Title II and Title XVI disability benefits on March 15, 2010, alleging an onset date of November 30, 2009. Plaintiff's alleged

OPINION AND ORDER - 3

disability was based on a number of mental impairments, including: Bipolar Type I, anxiety,

agoraphobia, depression and insomnia. Plaintiff met the insured status requirements of the

Social Security Act through June 30, 2011. Plaintiff's applications were denied initially and upon

reconsideration. An Administrative Law Judge (ALJ) conducted a hearing on January 10, 2012.

The ALJ heard testimony from plaintiff, plaintiff's mother, and an impartial vocational expert

(VE). On January 13, 2012, the ALJ issued a decision finding that plaintiff was not disabled as

defined under the Social Security Act.

At step one, the ALJ found that plaintiff had not engaged in SGA since November 30,

2009. Tr. 26, Finding 2.[1] At step two, the ALJ found that plaintiff suffered from the severe

impairment of bipolar disorder. Tr. 26, Finding 3. At step three, the ALJ determined that

plaintiff's severe impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404,

Subpart P, Appendix 1. Tr. 28, Finding 4. At step four, the ALJ determined that plaintiff has the

RFC to perform a range of work at all exertional levels but with the following limitations: she

should not work around hazards such as working at unprotected heights or around machinery

with exposed moving parts; she should not be given complex tasks; and she should have less

than occasional interaction with her coworkers and should have no contact with the general

public in her work tasks. Tr. 29, Finding 5.

Based on plaintiff's RFC and testimony from the VE, the ALJ determined that plaintiff

was unable to perform any of her past relevant work. Tr. 32, Finding 6. At step five, however,

the ALJ found that plaintiff could perform other work existing in significant numbers in the

national economy including work as a industrial cleaner, hotel cleaner, or small products

---

[1] Tr. refers to the Transcript of the Administrative Record.

assembler. Tr. 32-33, Finding 10. Therefore, the ALJ found that plaintiff was not disabled as

defined in the Social Security Act. The Appeals Council denied plaintiff's request for

administrative review, making the ALJ's decision the final decision of the Acting Commissioner.

Plaintiff subsequently initiated this action seeking judicial review.

## DISCUSSION

Plaintiff first contends that the ALJ rejected part of her testimony regarding the intensity

of her symptoms and the side-effects of her medications, as well as their effect on her ability to

work, for less than clear and convincing reasons. Second, plaintiff argues that the ALJ

improperly rejected the lay witness testimony of plaintiff's mother. Third, plaintiff asserts that,

because of these failures, the ALJ improperly relied on the VE testimony in determining that

plaintiff could perform other work existing in significant numbers in the national economy. This

court finds plaintiff's first and third arguments persuasive.

### 1.    Plaintiff's Testimony

Plaintiff asserts that the ALJ erred by failing to provide clear and convincing reasons for

finding that plaintiff's testimony is less than fully credible. An ALJ need not believe every

allegation of disabling pain or functional limitation advanced by a claimant. *See Orteza v.*

*Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). However, once a claimant shows an underlying

impairment which may "reasonably be expected to produce pain or other symptoms alleged,"

absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding

a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ may consider many factors in

weighing a claimant's credibility, including ordinary techniques of credibility evaluation, such as

the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, other

OPINION AND ORDER - 5

testimony by the claimant that appears less than candid, and inadequately explained failures to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. A claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2).

Regarding non-compliance with treatment, under SSR 96–7, an ALJ is not permitted to draw any inferences about an individual's symptoms and their functional effects that are based upon a perceived "failure to seek or pursue regular medical treatment" without first considering any explanations that the individual may provide, or other information in the case record that may explain such apparent failures. *See Mansfield v. Astrue*, CIV. 07-1427-HA, 2011 WL 285213, at *6 (D. Or. Jan. 25, 2011). An ALJ must also give clear and convincing reasons for rejecting a claimant's testimony regarding the side-effects he or she experiences from his or her medications. *See Batson v. Comm'r Soc. Security Admin.*, 359 F.3d 1190, 1196 (9th Cir. 1988); *Salazar v. Astrue*, 859 F. Supp. 2d 1202, 1228 (D. Or. 2012). Like other symptoms such as pain, the side-effects of medications can have a significant impact on an individual's ability to work and should factor into the disability assessment process. *Salazar*, 859 F. Supp. 2d at 1228(quoting *Varney v. Sec'y of Health & Human Serv.*, 846 F.2d 581, 585 (9th Cir. 1988)). Moreover, side-effects can be a "highly idiosyncratic phenomenon" and a "claimant's testimony as to their limiting effects should not be trivialized." *Id.*

The ALJ believed plaintiff to be sincere and not malingering, and yet nevertheless found that plaintiff's "statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are not consistent with or supported by the medical evidence of the record." Tr. 30, Finding 5. Specifically, although the ALJ found that when she

OPINION AND ORDER - 6

did not take her medications plaintiff's mental health symptoms worsened and she was hospitalized, the ALJ found that as long as plaintiff took her medications, she could function "fairly well." *Id.* The ALJ rejected plaintiff's assertion that her mental health condition prevented her from attending and seeking treatment and from taking her medications as "not persuasive" and "contradicted by the medical record." *Id.* Finally, the ALJ relied on the assessment of Sandra Lundblad, Ph.D., who found plaintiff to be not fully credible regarding her symptoms. *Id.* For these reasons, the ALJ concluded that plaintiff had alleged no medical problem that would physically prevent her from working as long as she followed her course of treatment. *Id.*

Plaintiff, in her testimony during the hearing, offered a number of bases for missing her appointments and not taking her medications. Plaintiff had trouble making her appointments at Lifeworks Northwest because her driver's license had been suspended. Tr. 46. Her mother worked two jobs and had difficulty giving plaintiff rides around her schedule. Tr. 50. Plaintiff further asserts that her mental health issues prevented her from taking the bus to Lifeworks Northwest by herself. *Id.* With regard to her non-compliance with her medication, although plaintiff admitted that she believed that the medications helped, side-effects such as extreme drowsiness that prevented her from working or from caring for her children and dyskinesia led to frequent and abrupt changes in the types of medications she took as well as their dosages. *Id.*

This court disagrees with the ALJ's conclusions regarding plaintiff's testimony. Although the ALJ's found that plaintiff's missed appointments were not due to her impairments, the ALJ barely discusses plaintiff's explanations for her difficulties with compliance nor does she provide specific reasons for discrediting plaintiff's statements regarding her symptoms or the side-effects of her medications. The ALJ writes that while she was hospitalized at Lifeworks Northwest in

OPINION AND ORDER - 7

August 2010 after not taking her medication, plaintiff denied that her medications caused her side-effects. Tr. 27-28, Finding 3. The ALJ adds that plaintiff was "noted as notorious for not taking her medications." *Id.* Upon examining the pages of the transcript cited by the ALJ, however, this court finds plaintiff in fact attributed the reasons for her hospitalization to her difficulties with her medication and exhibited signs of dyskinesia as a side-effect of her medications. Tr. 365. Only after she ceased taking Abilify, one of the medications she had been prescribed, did plaintiff's dyskinesia cease. Tr. 446. Nowhere in the pages of the report that the ALJ cited was the plaintiff regarded as "notorious" for not taking her medications. Moreover, although the ALJ said that Dr. Lundblad found plaintiff to not be completely credible, the ALJ never directly tied this credibility assessment to plaintiff's non-compliance with treatment. The ALJ erred in drawing inferences about the effects of plaintiff's symptoms based on non-compliance without expressly considering plaintiff's explanations for her non-compliance with her treatment. *Mansfield*, 2011 WL 285213, at * 6. As a result, the ALJ failed to state clear and convincing reasons for discrediting plaintiff's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

   2.    **Lay Testimony**

Plaintiff further contends that the ALJ improperly rejected the lay witness testimony of plaintiff's mother. Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account, unless [the ALJ] expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ must offer "arguably germane reasons for dismissing" lay testimony, but need not "clearly link [her] determination to those reasons." *Id.* at 512. However, the germane reasons given by the ALJ must also be specific. *Bruce v. Astrue*, 557 F.3d 1113,

OPINION AND ORDER - 8

1115 (9th Cir. 2009). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. *Lewis*, 236 F.3d at 511. But the ALJ cannot discredit lay testimony because it is not supported by, or corroborated by, medical evidence in the record. *Bruce*, 557 F.3d at 1116.

Here, the ALJ found that the plaintiff's mother's written third-party statements and her testimony concerning the intensity, persistence, and limiting effects of plaintiff's alleged symptoms were inconsistent with the supported medical evidence. Tr. 30, Finding 5. The ALJ gave great weight to the overall capacity assessment rendered by Daniel Scharf, Ph.D., who gave the opinion that plaintiff did not report symptoms consistent with bipolar disorder. In *Lewis*, the ALJ rejected testimony by the claimant's family members as contrary to "documented medical history and findings and prior record statements" without further explanation. 236 F.3d at 511. The Ninth Circuit held that this was not error, because the ALJ had explained the contradictory medical evidence and statements elsewhere in the decision. *Id.* at 512. Here, the ALJ notes throughout her decision the medical evidence she has credited for finding that plaintiff is not disabled. Based upon these standards, the court finds that ALJ gave specific and germane reasons for discounting the lay witness's testimony in this case regarding the intensity of plaintiff's symptoms.

### 3. Vocational Expert Testimony

Plaintiff argues that because the ALJ relied on the answers from the VE that were not based upon all of plaintiff's limitations, the VE's testimony has no evidentiary value. In making that determination at step five, the ALJ may elicit testimony from a VE, but the "[h]ypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citations omitted). However, if a VE's hypothetical does not reflect all the claimant's limitations, then the "expert's

OPINION AND ORDER - 9

testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Delorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

The ALJ rejected the hypothetical raised with the VE regarding the ability of a person who was off task twenty percent of the time to sustain competitive employment because the record reflected that plaintiff functions well when she is compliant with treatment and medications. *Tr.* 30, Finding 5. The ALJ did not include the side-effects of plaintiff's medications in her hypothetical question to the VE. Rather, the ALJ seemed to brush off any of plaintiff's concerns about the side-effects of her medication when discussing how taking her medication was conducive toward plaintiff's pursuit of gainful employment. Tr. 30, Finding 5. Side-effects can have a significant impact on an individual's ability to work and a "claimant's testimony as to their limiting effects should not be trivialized." *Salazar*, 859 F. Supp. 2d at 1228 (D. Or. 2012). The ALJ did not consider how plaintiff's difficulty with making appointments and her difficulties with how the side-effects from the many different types and dosages of medications might restrict her ability to perform substantial gainful activity. The ALJ's failure to include appropriate findings regarding the side-effects of plaintiff's medications in her hypotheticals to the VE constitutes error and requires remand.

### 4.    Remand

A court may remand a Social Security disability case for either further proceedings or for the immediate payment of benefits. *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). A remand for further proceedings is unnecessary if the record is fully developed, and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir.

OPINION AND ORDER - 10

2000). It is appropriate to remand for further proceedings in a case in which the ALJ has failed to articulate the reason for discrediting claimant's testimony, and adequate findings remain necessary for determining eligibility for disability benefits. *Light v. Social Sec. Admin.*, 119 F.3d 669, 793 (9th Cir. 2000).

This court concludes that outstanding issues remain that must be resolved before a determination of disability can be made. Further proceedings will be useful. Upon remand, the ALJ shall address all evidence presented in accordance with the standards outlined above.

## CONCLUSION

For the reasons provided, this court concludes that pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Acting Commissioner denying Gabriela Romero's applications for DIB and SSI must be REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this ruling and the parameters provided herein.

IT IS SO ORDERED.

DATED this 25 day of September, 2014.

Ancer L. Haggerty
United States District Judge

OPINION AND ORDER - 11